IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

        vs.                       Case No. 12-10212-01-JTM

JOHN K. MBURU,

        Defendant.

MEMORANDUM AND ORDER

This is an appeal from an order by the United States Magistrate Judge suppressing evidence against the defendant, John Mburu. Mburu is charged with one misdemeanor count of failure to possess a certificate of alien registration, in violation of 8 U.S.C. § 1304(e). The charge was presented for trial before the United States Magistrate Judge, who ruled that Homeland Security Investigations (HSA) agents effectively seized Mburu when they questioned him on January 18, 2012. Because they lacked a reasonable suspicion that Mburu was engaged in criminal activity, the Magistrate Judge ruled that Mburu's statements to the agents should be suppressed.

In an appeal from an suppression order in an action tried before a United States Magistrate Judge, this court reviews the arguments of the parties in the same manner as

the Court of Appeals reviews an order of this court. Fed.R.Crim.P. 58(g)(2)(A). Conclusions of law are subject to *de novo* review, but the court defers to the findings of fact of the Magistrate Judge unless those are clearly erroneous. *See United States v. Madden*, 682 F.3d 920, 924-25 (10th Cir. 2012).

In the present case, the meeting between Mburu and HSI Agents Marielle Schultz and Victor Montemayor arose as a consequence of the agents' repeated attempts to locate Fridah Nabea, a Kenyan national whom the agents believed had overstayed her student visa.[1] The agents had reasons for believing that Nabea was Mburu's live-in girlfriend. (It later proved that they were married). On January 5, 2012, Agent Schultz and HSI Special Agent Carl Hummell knocked on the door of her apartment at 7 a.m. while her car was in the parking lot. The agents heard people inside but no one answered the door. They made other unsuccessful attempts to meet Nabea at the apartment complex, and then tried to locate Mburu through his employer, but found he had quit.

On January 18, Agents Schultz and Montemayor returned to the apartment complex around 6:00 a.m., using separate vehicles. After about four hours, they saw a black male leave the complex and approach a Kia Optima, registered to Mburu, in one of the parallel stalls of the complex parking lot. They quickly drove next to the Kia. Agent Schultz parked her car in such a way that the tail end of her vehicle would have prevented the man in the Kia, who proved to be Mburu, from backing up. She testified that she did not park in this

---

[1] Nabea was later located and pled guilty to making a false statement. No. 12-10014-01-MLB (D.Kan. November 27, 2012).

way with the intention of blocking Mburu from exiting, although this was the effect. Agent Montemayor parked his car nearby.

Mburu had gotten in and started his car when Schultz tapped on the window. Mburu rolled the window down and Schultz identified herself and showed her credentials. She asked if she could speak with him and Mburu agreed. She asked him to turn off his engine while she spoke to him, and he did. She asked him for identification, but Mburu said he had none, and that his wallet was inside his apartment. He said he was on his way to school.

Agent Schultz asked him for his personal information, including his name, date of birth and social security number. He gave her the information, which confirmed he was Mburu. The defendant said he was a citizen and national of Kenya. Mburu at first said he was a student, and then said he was a lawful permanent resident (LPR). When Agent Schultz then asked him for his LPR card, Mburu said it was in his apartment.

Agent Schultz asked if he lived with anyone, and Mburu said he lived with his wife, Fridah Nabea, and that she was in the apartment. Schultz told Mburu that federal law requires him to have his LPR card with him at all times, and asked him to go into the apartment and get his card. Mburu refused, and Schultz explained he could be arrested for not possessing his card. Mburu responded that she should go ahead and arrest him. Schultz tried to explain the situation further and that the agents needed to speak with his wife regarding her immigration status.

Mburu said he would not go his apartment and he would not "give up" his wife. He acknowledged that he knew the agents had been trying to contact him and his wife. The agents then arrested Mr. Mburu for violating 8 U.S.C. § 1304(e) and took him into custody.

The parties do not dispute the governing rule of law. Mburu was seized in a constitutional sense, if a reasonable person in his position would have felt that he was not free to leave. *See United States v. Madden*, 682 F.3d 920, 925 (10th cir. 2012). Questions as to a person's identity are generally not, by themselves, a seizure in a Fourth Amendment sense. *INS v. Delgado*, 466 U.S. 210, 216 (1984).

In the present appeal, the government argues that "the problem is there is no evidence Mr. Mburu knew Agent Schultz's car was behind him." (Dkt. 8, at 7). Otherwise, the government cites a general lack of evidence that Mburu himself was subjectively intimidated. (Dkt. 8, at 8) (noting that Mburu "gave no indication he wanted to leave, made no mention of trying to leave or not wanting to talk to the agents, or that their cars were blocking his exit, or needing them to move their cars so he could back out").

The court will deny the appeal. It must be remembered that "reasonable inferences drawn from the evidence fall within the province of the [trial] court." *United States v. Gordon*, 168 F.3d 1222, 1225 (10th Cir. 1999), *citing United States v. Villa-Chaparro*, 115 F.3d 797, 801 (10th Cir. 1997). This court must "construe the facts in the light most favorable to [defendant]." *United States v. Vogl*, 7 Fed.Appx. 810, 812 (10th Cir. 2001), *citing United States v. Lin Lyn Trading*, 149 F.3d 1112, 1113, n. 1 (10th Cir. 1998).

4

Here, it is certainly *possible* that Mburu indeed did not notice the two HSI vehicles, and in particular was oblivious to Agent Schultz's car which blocked his own. But this is not a fact directly present in the record. Equally, the government's further contention that "Agent Schultz had to tap on the defendant's window after he had started his car (facing away from where the agents were parked) to get his attention," (Dkt. 10, at 2), is not directly supported by the testimony cited. Rather, Agent Schultz simply described a sequence of events:

> .... So on that day, on January 18th, I did see a gentleman that walked to the car that was registered to Mr. Mburu. It appeared that he was walking to that car.
> We pulled around. I knocked on the window and asked if I could speak with him. I identified myself, and he said that I could. I asked if he would mind turning off the engine while I spoke with him, and he did.

(Tr. 14). Schultz did not describe Mburu as oblivious to her presence, in the absence of a knock. The government's argument is an inference, drawn from the evidence.

The magistrate drew a different inference, one at least as plausible — that Mburu was blocked by Schultz's car, and knew he was not free to leave. The encounter occurred around 10:00 a.m., and there is nothing in the record to suggest any weather condition which would have prevented Mburu from noticing two vehicles rapidly approach and stop next to his own car. As Agent Schultz testified, once the agents saw Mburu, they were "trying to get there as quickly as possible."

That Mburu himself may not have been intimidated, as the government argues, is beside the point. "The rule looks, not to the subjective perceptions of the person

5

questioned, but rather, to the objective characteristics of the encounter that may suggest whether a reasonable person would have felt free to leave." *California v. Hodari D.*, 499 U.S. 621, 640 (1991), *citing Florida v. Royer*, 460 U.S. 491, 498 (1983). *See also United States v. Torres-Guevara*, 147 F.3d 1261, 1264 (10th Cir. 1998) ("defendant's subjective belief that she was not free to leave is not determinative").

In *United States v. Thompson*, 546 F.3d 1223 (10th Cir. 2008), the court rejected an appeal from a defendant who argued that he had been seized, as he was walking to his car in a convenience store parking lot, when four police vehicles entered the lot, one of which parked twelve feet behind his car. In reaching this decision, the court stressed both that the defendant was on foot at the time he was questioned, the twelve feet in distance between the defendant's car and the police car, and — in particular — the fact that district court had decided the interaction was consensual. 546 F.3d at 1229.

> [W]e bear in mind that the district court heard the testimony and we did not. Even if we might have weighed the factors differently, we cannot say the district court erred in holding that the totality of the circumstances, viewed in light of the Supreme Court's and our own precedent, indicates Mr. Thompson's encounter with the police was consensual. The fact that Officer Zepeda parked his car approximately twelve feet from Mr. Thompson's car is not enough in and of itself to tip the balance in favor of finding a lack of consent.

(*Id.*)

Here, Mburu was in his vehicle when he was questioned, Agent Schultz parked immediately behind Mburu's car so that it was indeed blocked, and the Magistrate Judge weighed the evidence and found the encounter was not consensual. *See United States v.*

6

*Berry*, 6740 F.2d 583, 597 (5th Cir. 1982) ("blocking an individual's path or otherwise intercepting him to prevent his progress in any way is a consideration of great, and probably decisive, significance").

In *United States v. Robinson*, No. 99-10018-01-JTM, 1999 WL 358742 (D. Kan. May 12, 1999), this court held that a seizure occurred when the investigating highway patrol officer parked his patrol vehicle one or two feet into path of defendant's car while it was parked at a gas station. The court held that

> a reasonable person ... could only have interpreted the officer's parking of his patrol car as a signal that he was specifically and intentionally preventing further forward movement of the vehicle. A reasonable person would have concluded, observing this deliberate restraint on her freedom of movement, that she was neither free to go nor to terminate the interaction and decline the officer's requests.

*Id.* at *4. *See United States v. Ringold*, 335 F.3d 1168, 1174 n. 1 (10th Cir. 2003) (distinguishing *Robinson* in an action where, "[a]s found by the district court, ... the patrol car was well back and to the side of defendants' vehicle and was not impeding their path in any way"). *But see United States v. Kim.*, 25 F.3d 1426, 13031 (9th Cir. 1994) ("partially block[ing] Kim's egress with his automobile informs but does not alter our conclusion that Kim was not stopped in the constitutional sense").

Here, the Magistrate Judge was entitled to draw reasonable inferences, drawn from the evidence before her. Given the totality of the circumstances of the case — the rapid nature of the two vehicles approaching and stopping next to Mburu's own, the time of day, Schultz's action in physically blocking Mburu's car, and the fact that a reasonable person

7

in Mburu's position would have seen Schultz's HSI vehicle when he looked in his mirror before backing up — her conclusion that Mburu was objectively detained is not clearly erroneous. As the government does not argue in the present appeal that the HSI had a reasonable suspicion to detain Mburu for questioning, the court finds no error.

IT IS ACCORDINGLY ORDERED this 9th day of January, 2013, that the decision of the United States Magistrate Judge is hereby AFFIRMED.

                                          s/ J. Thomas Marten
                                          J. THOMAS MARTEN, JUDGE